Mr. Grossman. Good morning. May it please the court. My name is Richard Grossman. I represent the debtor, Elena Hernandez. When, over 100 years ago, the Illinois legislature enacted the Workers' Compensation Act, they indicated in no uncertain terms that they did not want any award from the act to be subject to the claims of creditors. The specific language is no payment claim award under this act shall be subject to any lien, attachment, garnishment, or be held liable in any way for any lien, debt, penalty, or damages. That language has not changed from that day, when they enacted the law 100 years ago, to now. It's still on the books. Despite this, the district court in this case determined that the medical providers that are the ejectors to the exemption would be able to reach the proceeds of debtors' workers' comp award. It seems to me the facts of this case are very murky. There is a statement in the hearing before the bankruptcy court that the medical provider's attorney has said, we had a relatively small recovery in workers' compensation. I can't tell, looking at the structure of the statute, whether the medical providers billed the employer. I can't even tell who her employer is, but whether they billed her employer directly, whether they went through the procedures set forth by the 2005 amendments. I can't figure out how those procedures make sense, if there isn't some recoveries for the workers' compensation. Medical bills need to be sent to the medical provider. It's a mess. As far as the facts in the case, my client got a $30,000 award. Against what backdrop? She settles this case, which apparently has to do with her medical expenses and the workers' compensation. She's before the administrative agency. She settles it for the $30,000 and some. Bankruptcy judges are very unhappy that she doesn't tell anybody that she's doing this, even though the bankruptcies. I'll put that to one side. I can't tell what voice the providers had in this proceeding, whether they were participating in her settlement, whether they had any ability to exercise their rights under the statute to get paid. Frankly, I don't do workers' comp work, so I don't know. But when I look at the statute, it seems to anticipate that what happens is there's a structure for them. If it's undisputed, you send it right to the employer, and the employer pays the bill. If it's disputed, then the employer has to stop billing or doing anything to collect on the claim until it's resolved in the workers' comp arena. The statute seems to anticipate that there will be instances in which a claim will be settled, and then the debtor will still owe on the bills, because that's what the statute says. Yeah, but then look what happens. Then the debtor files the bankruptcy, and it's a no-asset bankruptcy, and so the debtor keeps the $30,000, and the medical providers get zero. Our argument is this. That seems wrong. It might seem wrong, but in bankruptcy circles, and this isn't just my opinion, but it's documented, or at least it's cited in many bankruptcy cases, that bankruptcy changes everything. We know that. I mean, I know one of the things that you said, and your opponent seems to agree with you, is maybe we should let the Illinois Supreme Court sort out the question, how these 2005 amendments relate. I think you might lose, actually, on this. I think they might say, in order to make any sense out of the 2005 amendments, you have to have an understanding about... Well, that's not what the Illinois Appellate Court said. I don't know what the Supreme Court will say, but the Illinois Appellate... Well, they're not the final authority. Right. The Illinois Appellate Court rejected these... The district court's decision was grounded in application of certain principles of Illinois statutory construction. The principle that it focused on was the one that requires you to have a harmonious whole, when you have a statute that has many parts. The district court judge found that, in order to make this harmonious whole, you need to have an implied or a sub silentio exception to the statute. The Illinois Appellate Court said, we're not going to do that. In fact, one of the objectors in this case was the plaintiff in that case. And they said, we're not going to do that because it's inappropriate to ever read into the statute exceptions. It said, our Supreme Court has cautioned that we cannot construe a statute to add an exception when none otherwise exists. And it is well-established canon of statutory construction that where the statutory language expresses certain exceptions, it's construed as an exclusion of any others. So in that case... If that's right, your position has to be that what the 2005 amendments allow are resumed collection efforts. Make phone calls, send letters, try to work out a payment plan, whatever. And they certainly contemplated in a world where the individual you're dealing with is not insolvent. But I think your point is that the 2005 amendments, they have to stop, as far as their reach, when they get to a point of some type of lien being attached to workers' comp proceeds. That's right. Right? And so whether that world makes sense or not, that's the position, at least to restate it, correct? Our position is that these exemptions are part of the landscape that every economic actor acts in. And they're no different than anybody else who finds themselves in a situation where they are owed money and the person files bankruptcy. Judge Sykes, you wanted to ask a question. What we have before us really is a question of statutory interpretation, which is whether the amendments to the Workers' Compensation Act to provide for this sort of... Not sort of. It is a complicated payment scheme when there's a workplace injury and a workers' compensation claim is filed. The employee has to pick from a panel of providers to get her medical care. Or if she retains private providers, there's another set of regulations that are required. And then the billing has to go directly to the employer who has to pay during the pendency of the claim. And then there's a resumption of direct billing after the claim is resolved by decision or settlement. And whether those payment provisions for the medical providers in the context of a workplace injury override the exemption in Section 21. I am feeling very much at a loss based on the briefing in this case, based on the district court's opinion, and certainly the bankruptcy judge did not even address the statutory question. She said, you didn't give notice, you're out of here. Right. So we have a very... And then there's factual questions about whether these were, as Chief Judge Wood inquired at the time of this argument, whether these were privately retained providers or whether these were panel providers who were agreeing to take a particular rate and so their claim was folded into the recovery. We don't know the answers to any of those questions. A couple things. I think this is a very inadequate record and it's a very inadequate set of legal briefs on this statutory interpretation question. And maybe that's why you're both in agreement that we should just pump this over to the state Supreme Court. I think that that's, at least that's one thing you could do. But when I look at the statute, I don't notice that there's any, and maybe I'm wrong, and I think counsel, my opposing counsel does practice in that area. I don't think there's any role for the medical providers to play in the workers' comp court. No, clearly there is under the statute. We just don't know what role these particular providers played, whether they were panel providers who agreed to take a certain rate, their claim was folded into the workers' comp recovery, or whether they're private providers who are subject to the suspended billing provision in the statute, which says you can't send your bills to the employee anymore. You have to send them to the employer during the pendency of the claim, but then you can resume your private billing afterwards. We just don't know the answers to those questions. And yet we have a very, in my opinion, a very, as a first impression opinion that's out there now by the district court, which medical providers will be able to use to say, hey, she can't file bankruptcy and avoid our claim. That needs... Right, something needs to be done about it. Something needs to be done. All right, thank you very much. Mr. Mandel. May it please the court, Alan Mandel for the objecting creditors, the medical providers. This is a case about an exempt asset, and if we use the phrase exempt asset, the noun is asset, and the debtor wants to treat that asset as exclusively hers. So let me ask you, though. I mean, I have pored over this set of 2005 amendments, and your opponent is right. They don't say a word about Article 20 or Section 21. There is, as Judge Sykes was saying, this very elaborate procedure. This is what happens if we all agree on the amount that should be paid. This is what happens if the employer says the employer doesn't think it's covered, or there's another thing that happens if the employer will pay only a portion of the bill. But how you figure out what's owed is one thing. Which assets are subject to being collected against is a completely different thing, and there are exempt. And so I don't know whether the Illinois legislature just didn't think about this problem or what, but what I can't find is the essence of your argument, which seems to be why bother to have this complicated procedure if you're not going to let the medical providers at the recovery at the end of the day? It's a perfectly good question, but I don't know that Illinois may have taken the decision that they want to protect some assets, so they don't want this to be part of it. Another thing I don't know is what's going to, this is a very inmateous race situation. So suppose we said no, these assets are under Section 21. I don't know if that's the end of the day for your clients, whether there's some exemption. So what I would argue is that when the 2005 amendments were passed, they took a parcel of rights that could only be adjudicated in the Illinois Workers' Compensation Commission. And they are rights which include the workers' rights to disability benefits, either temporary or total, either partial, I'm sorry, partial or total, or temporary or permanent. Those are the assets which traditionally have been exempt under Section 21. But then there's another bundle of rights. But where is the collection stuff? I mean, I see a lot of process in here, and I see under E20, for example, once there's a final award or a settlement, the provider may resume any and all efforts to collect from the employee, employees responsible for the bills. What I don't, I cannot find a reference to Section 21 in here. You won't. You won't find it. So Section 8.2 was an overarching modification of the workers' compensation scheme. They limited the prices that doctors could charge. They made the obligation to pay the doctors direct upon the employer and insurer. Did that happen here? Did your clients get any direct payments from the insurer? It's not in the record, but I will tell you I believe there was some modest payment. Why is this record enough for us to make a rational decision on this case? Why shouldn't we just send it back to the district court who might want to remand it to the bankruptcy court and say, we need more information? Because the bankruptcy petition itself supplies you with adequate facts. I didn't find them. The bankruptcy petition says I have no assets except for my claim in front of the industrial commission, but I have a lot of liabilities for medical procedures, and there is no way for those medical claims to have been adjudicated anywhere but the workers' comp commission. But that creates a judgment debt. So the medical providers become judgment creditors when the Illinois workers' compensation commission is finished. They're creditors. But why does being a creditor mean that you can reach exempt assets? I don't think I've answered your first question, which I'd like to double back to because I think it will answer both questions. The statutory scheme provides that this bundle of rights that's sitting in the Illinois industrial commission or the workers' comp commission are both the doctor's rights to get paid directly by the employer and the workers' rights for disability benefits. Now, the only place that's adjudicated and can be adjudicated by statute is the Illinois workers' compensation commission. So you have a statutory scheme that in 2005 draws this distinction between what's going to come out of an award, is it going to be an award of the amount of medical bills which the commission adjudicates were reasonable and necessary, and is part of the award going to be the workers' disability benefits? And they're wrapped up into one. What the record demonstrates is that Ms. Hernandez had the opportunity to adjudicate those two for everyone's benefit. And she chose not to adjudicate those. She chose to enter into a settlement agreement after she filed her bankruptcy petition without notice to anybody such that she made the decision instead of the workers' comp commission as to how to distinguish between the doctor's bills on one hand and her rights to disability on the other. Were the providers participating in her workers' comp claim?  Were the providers participating in her workers' comp claim? The providers, as we like to say, and I think it's even reflected in the Zurich decision from the Illinois Republic, the providers have no seat at the table. They are beholden to the worker and the workers' attorney. But do they submit documents identifying what the medical claims have been or the medical costs have been? They submit bills to the insurance company or the employer. The employer's workers' comp insurer, basically, right? The bills are known. Right, but are those facts in front of the commission? Yes. Okay, so they participate factually, but they don't have a lawyer at the table. Correct. They could be subpoenaed to testify on behalf of the injured worker. They could be asked to justify the reasonableness and necessity of the treatment. But unless the worker engages them to do that, they're not heard from. And in this case, Ms. Hernandez chose, with $150,000 or $60,000 or $70,000, including $138,000 to these objecting creditors, not to submit those claims to the commission for adjudication one way or the other. Was she represented by counsel in that? She was. Not Mr. Grossman. She was represented by a workers' compensation attorney. Who negotiated with the employer's insurer for this settlement, and we don't know what the settlement covers. It's just a lump sum. So what startles me is the idea, and I'm getting the sense from you, that settlement is somehow unusual in this context. And my experience with litigation is that settlement happens all the time in all kinds of things. So are you saying that the fact that it's a settlement makes it suspect? Or it's actually settlement is contemplated in the statute. Right. No, I'm not suggesting that at least. It anticipated that in the main, those medical bills would be adjudicated, would be paid without conflict, and that the worker was going to have every incentive under the sun to make sure those claims were adjudicated because if the worker came to either an award or a settlement, and those claims were not adjudicated, the worker remained liable in a way that the worker was not liable before. So the worker's got all the incentive in the world to get an adjudication from the commission such that the worker could be insulated. The worker could say, wait, I'm only entitled to $30,000. Maybe she was entitled to $200,000. She just wanted $30,000 to run. But if I'm entitled to $200,000 and you decide I'm entitled to $30,000 for my disability and $170,000 for my medical bills, and then she files bankruptcy, the trustee is in a position where the trustee, much like the debtor, is a common law trustee for the benefit of those parties, the doctors, who can only make a claim through the worker. And so she breached that duty, and she breached her duty to the trustee in the bankruptcy court by simply entering into a settlement. Although E-20 says, upon a final award or judgment by an arbitrator or the commission or a settlement agreed to by the employer and the employee, and as you say, the provider isn't in there. I mean, I get that. It's frustrating. A provider may resume any and all efforts to collect payment for the employee. But it does suggest that the settlement, that the law understands that the commission may not resolve everything. There may be a settlement between the employer and the employee. And apropos to that point, if the employee shirks all consideration of the doctor in favor of a settlement, then Section 21, notwithstanding the doctor is expressly permitted to pursue the worker for a settlement. So isn't the point you're just making right now, why isn't the sensible thing given to certify this to the Illinois Supreme Court and get some guidance on the intended intersection of these two statutory provisions? And then once we have that, just iteratively take it and figure out, well, what do we do then? But right now we have this whole dialogue going on about a pretty straightforward Section 21, but a mighty complicated set of 2005 amendments, and where they leave off once somebody secures an award. My answer to the question, should you certify this, it's certainly within your discretion. And I can certainly see, and as my papers indicate, I can certainly see there's some sensibility in that. By the same token, this court does sometimes predict the decisions of the Illinois Supreme Court. We're talking about medical bills for treatment between 2009 and 2011. It's now 2018. Yeah, the part that I worry about here is that if the court gets into the legal aspect of this, part of it is a very complicated set of both administrative and substantive procedures. And I worry that it's as much legal work as it is guesswork, given where we're at right now. I just don't know what, in light of the question, I don't know what sense to make of the 2005 amendments. Well, our position and Judge Alonzo's position is there's only one way to make sense of them, and that's to give them effect. Because if a statute is amended, you have to then reinterpret the statute as a whole to give effect to all aspects of the statute. Right. The problem is they can be given effect without abrogating the exemption. Your position is that those are irreconcilable, but on the face of the text of the amendment that provides for the payment procedures, they're not irreconcilable. Billing resumes and collection activity resumes post-decision and settlement. So if under E20 you're allowed now, after the injunction is lifted, to pursue the patient, but you believe that Section 21 means but you can't pursue the patient for the money when they got money in a settlement but didn't take care of their obligations to the medical community within the context of the IWCC, those are irreconcilable. Okay. I'm sorry. I think we have your point. So we appreciate what you've said. Thank you. Did you save any time, Mr. Grossman? I think your time ran out. So we will take the case under advisement. Thank you. Thank you.